## THE MACK.

### THE ARTHUR CONNERS.

### THE FIDELITY.

### FRANK McWILLIAMS TRANSP. CORPORATION v. CONNERS MARINE CO., Inc.

### ADAMS COAL CO., Inc., v. SAME.

### Nos. A–14963, A–15070.

District Court, E. D. New York.

Jan. 28, 1937.

Purdy & Purdy, of New York City (Frank C. Mason, of New York City, of counsel), for libelant Frank McWilliams Transp. Corporation.

Macklin, Brown, Lenahan & Speer, of New York City (Leo Hanan, of New York City, of counsel), for libelant Adams Coal Co., Inc.

William J. Mahar, of New York City (William J. Mahar and Edward L. P. O'-Connor, both of New York City, of counsel), for claimant.

BYERS, District Judge.

These causes were consolidated for trial, and have to do with the sinking of the laden coal barge Mack, on January 30, 1936, in Mill Basin about one-half mile easterly of the Adams coal dock in Brooklyn, at about 9:30 a. m.

The first cause is that of the owner of the Mack, and the second is that of the cargo owner.

The tugs Arthur Conners and Fidelity, claimed by Conners Marine Co., Inc., were libeled.

The sinking occurred as the result of the barge's striking ice so that a hole 8 inches by 24 inches was stove in her bow, just below the water-line, near the starboard corner. The planking was 4 inches by 10 inches, and a bow rake timber, 6 inches by 12 inches, was also broken.

No one denies that the damage was sustained while the Mack was in tow of the Diesel tug Arthur Conners, and the only question is whether it resulted from contact between the barge and heavy ice at the edge of a channel which had been opened for navigation, or from a floating cake in that channel.

It is found that the barge was being towed on two short hawsers, and that 18 to 20 feet separated the stern of the tug from the bow of the barge. Also that the said passageway through the ice was about 40 feet in width, at the place where the damage was done.

The barge is 105 feet long and has a beam of 30 feet. The bow is square. As laden, there was a 6-foot freeboard forward.

The tug is 87 feet long and 21½ feet in beam.

The trip started at Stapleton, S. I., about 4:00 a. m. and no ice was encountered in the bay, where the barge was towed alongside. At Barren Island she was placed astern on hawsers as stated, and the tug Fidelity there joined the flotilla, and was towed aft of the barge on two lines, one from each stern cleat of the barge. Pre-

sumably this was to hold the barge straight behind the Conners; perhaps also to tow the barge astern if ice conditions so required, but there is no testimony on the subject.

Thereafter entrance was made into the channel through the ice. An outbound tow was met, emerging from Mill Basin into Island Channel, and then the Fidelity dropped the lines and went ahead, joining the tug of that tow in widening the channel so that the barges safely passed to starboard. From this it is inferred that the open water there was about 60 feet wide, so that additional space was required for the passing.

Then the Fidelity proceeded ahead into Mill Basin, and the Conners followed with the Mack astern, having rounded the Island Channel buoy. The course was about westerly and progress was slow. The tug captain says it was not better than one mile an hour, and that is accepted, because the channel was full of floating ice. He said he was moving under one bell, and there is no reason to doubt that testimony.

The channel was about 40 feet in width, which left a clearance of 5 feet on each side of the barge, if the tug kept in the middle.

It is agreed that neither tide nor wind affected the navigation.

The bargee testified that, after 15 minutes or so, his vessel struck the edge of the ice on his starboard hand with such violence that he went forward to investigate, and found the bow in contact with and up "against the solid ice, on the edge of the channel." That he heard it hit. That he looked over the side at the corner, saw nothing and then opened the starboard bow hatch to see if there was inside damage, and heard the water pouring in below. He at once called to the tug and, after a delay of a few minutes, attracted the attention of the mate, and made known his plight. The tug dropped back, and took him aboard, and towed the barge to the port side of the channel, where it sank in about an hour.

That is the affirmative evidence, and it is met only by the denial of the mate of the tug, that he felt any striking or stopping of the barge. The slow progress may account for that.

There was no breaking of any hawser, and with this meager evidence it is necessary to reach a conclusion as to what probably happened.

Since the barge was on short hawsers, it is fair to assume that the tug's quick-water would move loose ice laterally, so that such pieces as did strike the barge would do so in that manner.

This damage was not caused by any glancing blow. It was a head-on impact of such force that stout and healthy timbers were broken. The witness De Mars demonstrated the reasonable and probable nature of the impact, and his testimony was not impaired, nor was it offset by anything offered by the tug.

The bargee was not discredited on cross-examination, nor did he impress the court unfavorably as a witness. The same may be said of the mate of the tug, but his negative testimony cannot be thought to have overborne the affirmative evidence of Ostling, the captain of the barge

■ It is found, therefore, that the libelant has prevailed as to the specification of fault against the Arthur Conners, that she brought the Mack into contact or collision with solid ice.

The somewhat casual conduct of the Fidelity is not to be overlooked. In a 40-foot channel, it might have been difficult for her to make fast alongside the Conners, as her own beam was 22 or 23 feet —her captain is not sure which. But she was on hand to assist in the operation and seems to have been quite indifferent to what was going forward.

If the damage had been caused as in Daly v. Pennsylvania R. Co. (D.C.) 257 F. 761, her conduct might have met the same criticism as appears in that opinion, but, for all that is here shown, the Mack might have been brought against the edge of the channel if the tugs had been alongside.

■ Their joint failure to attempt to prevent sinking, however, by endeavoring to siphon the barge, is more serious. The case of Henry Du Bois Sons Co. v. Pennsylvania R. Co. (C.C.A.) 47 F.(2d) 172, is thought to be in point. These tugs apparently were content to let the Mack sink, without making any effort to prevent that happening, although the Fidelity came back to the Conners, while the Mack was afloat. Nothing is said in their behalf, except that the inflow of water on the barge was so severe that nothing could have been done. That does not answer the obvious fact that nothing was tried.

The duties imposed by the bailment were not discharged in this respect, and

both tugs are held at fault on this specification.

The libelants may have separate decrees, with costs, to be settled. If findings are desired, they may be presented at the same time.